UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| JOSE HERNANDEZ TORRES, ET AL., | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civ. No. 96-1947 (PG) |
| | * | |
| PEDRO TOLEDO DAVILA, ET AL. | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPINION & ORDER

Pending before this Court are Coefendant Pedro Toledo Davila's motion for summary judgment on plaintiffs' 1983 claim and Defendants' motion for summary judgment on Coplaintiff Sonia Irizarry's claims. (Dkts. 24 & 25) Plaintiffs opposed summary judgment on both counts, alleging that issues of material fact persisted. (Dkts. 35 & 37)

## FACTS

The record, viewed in the light most favorable to Plaintiffs, supports the following set of facts. On August 10, 1995, between 2:00 p.m. and 3:00 p.m., the Puerto Rico Police Department ("PRPD") was dispatched to the Bayamón Housing complex when shots were fired by an unknown shooter. Although exact numbers are unknown, a substantial amount of police appeared at the complex. At some point, some members of the press also arrived at the complex. Along with the police and press, many residents of the complex were outside watching the investigation take place, including Ms. Sonia Irizarry ("Irizarry"), her husband Mr. José Hernández ("Hernández"), her son Luis Raúl González Irizarry ("González"), and her daughter-in-law Sandra Colón-Lourido ("Colón").

While standing outside watching the events unfold, Hernández attempted to speak with a



cameraman from one of the local news stations. For an unknown reason, a police officer stepped forward and intervened with Hernández' attempt to speak with the cameraman. The officer yelled at Hernández and pushed him in the chest. González, who was standing next to his father, then tried to inquire why the officer was harassing his father. The officer responded by also pushing González. The commotion brought ten to twenty more officers over.

An officer hit Hernández in the face, sending his sunglasses flying. Irizarry began to run to Hernández' side but was pulled back by one of her daughters, Nicole. It seems officers and several residents exchanged blows, although the detail provided the Court at this stage is sparse. Hernández, his son, and his son's wife, in the middle of mutliple police officers, were dragged off, separately, by the police where officers continued to pound on all three. Irizarry was standing off to one side, helplessly watching her husband, her son, and her daughter-in-law being assaulted by multiple police officers.

Five or six officers were on top of Colón, with a female officer hitting her, grabbing her hair, and dragging her across the ground. Another officer finally intervened in the beating only to tell the female officer to stop because the press was recording it.

As six or seven officers surrounded González, several of them held his hands behind his back and one police officer hit him in the side using the butt of his nightstick. When Irizarry tried intervene to stop the beating her family, a officer told her to stand clear or he would arrest her as well.[1] Irizarry was again pulled away by a friend or family member before she was harmed or arrested.

Hernández, his son, and his daughter-in-law were all placed in handcuffs and arrested. The

---

[1] Apparently, this same officer laughed when Irizarry informed him that her husband's eyes had been damaged by welding that same day, and that was why he had trouble seeing. This show of compassion sufficiently sums up the attitude of the PRPD that day.

96-1947 (PG)                                                                                               3

police placed them inside a van and drove away. When Irizarry asked an officer where they had taken her family, he replied "La Goya." police station.

Irizarry went to the station and posted the $2,000 bond to free her family. Hernández complained of pain in his ribs on the right hand side. The son had a mark on his side from the nightstick attack. Colón had marks on her side and scratches on her face. Plaintiffs alleged that the police did not provide medical treatment to Hernández, González or Colón, despite these injuries.

All the officers involved were uniformed policemen (though dressed in various uniform styles). No shots were fired by the police or residents. Irizarry has never been arrested. Irizarry suffered no physical injuries in the melee, although she now has a justifiable fear of all police officers.

Governor Pedro Roselló appointed Codefendant Pedro Toledo Davila ("Toledo") Police Superintendent in January of 1993. Toledo has remained as Police Superintendent since January of 1993.

Codefendant Milagros López ("López" or "Officer López") entered the PRPD on July 15, 1991. Prior to this incident, López had never been the subject of an administrative investigation or disciplinary proceeding by the Administrative Investigations and Disciplinary Affairs ("AIDA"). Lopéz was later identified as the female officer who assaulted Colón.

Codefendant Jorge Delgado Alicea ("Delgado" or "Officer Delgado") entered the PRPD on December 16, 1992. Prior to the present incident, Delgado was investigated by AIDA one time for abandonment of his duties. *See* Complaint No. Q-96-07-16-93.

Codefendant Wilson Mercado Rivera ("Mercado" or "Officer Mercado") entered the PRPD on June 29, 1979. Between February 1989 and October 1997, Mercado was investigated no less than seven

96-1947 (PG) 4

times by AIDA. At least one investigation of Mercado centered on his violence towards a citizen.[2] Two investigations may have surrounded incidents of domestic abuse and the Deputy Superintendent for Administrative Investigations recommended a ninety (90) day suspension of Mercado for one of the incidents. Five of the complaints occurred during Toledo's time as Police Superintendent and for which Toledo issued final disposition. One complaint of Mercado involved the pushing of a citizen during a strike and shouting at a truck driver to drive over her with his truck. Though the recommendation was for a three day suspension, the police superintendent at that time dismissed the case.

Codefendant Humberto Thillet Guzmán ("Thillet" or "Officer Thillet") entered the PRPD on November 26, 1969. Between November of 1969 and May of 1996, Thillet was subject to no less than fifteen (15) AIDA investigations, including at least five (5) having to do with incidents of violence of use of force against citizens. Thillet has been censured twice, while the other three complaints were dismissed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). *See also Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986). Therefore, the trial court must go beyond the façade of the

---

[2]Plaintiffs have questioned the veracity of the administrative records upon which Defendants rely, pointing out several inconsistencies in reporting incidents.

AO 72A
(Rev.8/82)

96-1947 (PG) 5

pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir. 1999), *reh'g denied by* 171 F.3d 710 (1st Cir. 1999), *cert. denied* __ U.S. __, 120 S. Ct. 44 (1999); *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trial worthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50).

## SUPERVISORY LIABILITY UNDER A SECTION 1983 CLAIM

"In order to establish a cognizable claim under 42 U.S.C. § 1983, plaintiffs must not only demonstrate the defendants, acting under color of law, deprived them of a federally protected right; but must also prove that these defendants were personally involved in such a violation." *Gualdarrama, et*

96-1947 (PG)                                                                                         6

*al. v. Ortiz, et al.*, No. 97-2481 (SEC), 1999 U.S. Dist. LEXIS 7142, at *7 (D.P.R. Mar. 31, 1999) (citations omitted). Supervisors thus may be found liable only on the basis of their own acts. Therefore, liability lies where a plaintiff can show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." *See id.* at *8 (citing and quoting *Gutierrez-Rodriguez v. Cartegena*, 882 F.2d 553, 562 (1st Cir. 1989)).

Section 1983 actions are frequently brought against law enforcement officers for allegedly using excessive force in accomplishing an arrest. *See, e.g., Gualdarrama, et al. v. Ortiz, et al.*, 1999 U.S. Dist. LEXIS 7142; *Rodriguez-Oquendo, et al. v. Toledo-Davila, et al.*, 39 F. Supp. 2d 127 (D.P.R. 1999); *Diaz, et al. v. Martinez, et al.*, 112 F.3d 1 (1st Cir. 1997); *Rivera, et al. v. Medina, et al.*, 963 F. Supp. 78 (D.P.R. 1997); *Muñoz, et al. v. Toledo-Davila*, 954 F. Supp. 455 (D.P.R. 1999); *Camilo-Robles v. Zapata*, 175 F.3d 41 (1st Cir. 1999); *Maldando-Denis, et al. v. Castillo-Rodriguez, et al.*, 23 F.3d 576 (1st Cir. 1994); *Gutierrez-Rodriguez*, 882 F.2d at 553. The legality of the arrest is immaterial to the question of excessive force. *See, e.g., Williams v. Liberty*, 461 F.2d 325 (7th Cir. 1972). Even if no permanent or serious injury resulted, the force used may be deemed to be excessive. A psychological injury may be sufficient to support a civil rights action under § 1983. *See, e.g., Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998); *Dunn v. Denk*, 54 F.3d 248 (5th Cir. 1995), *cert. denied*, 519 U.S. 813 (1996).

A plaintiff may also state a cause of action against an entire police force for recurring excessive force. *See, e.g., Spell v. McDaniel*, 604 F. Supp. 641 (E.D.N.C. 1985), *aff'd in part, vacated in part,*

AO 72A
(Rev.8/82)

96-1947 (PG) 7

824 F.2d 1380 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988). If a plaintiff sues a municipality, however, the plaintiff must prove that some policy, practice, ordinance or regulation caused a deprivation of constitutional rights. *See Wierstak v. Heffernan*, 789 F.2d 968 (1st Cir. 1986); *Kibbe v. City of Springfield*, 777 F.2d 801 (1st Cir. 1985), *cert. dismissed*, 480 U.S. 257 (1987). An arrest by an officer which is motivated by a desire to chill speech or expression protected by the First Amendment may also give rise to an action under § 1983. *See Tarto v. Kervin*, 41 F.3d 9, 18 (1st Cir. 1994).

As discussed above, although a supervisor cannot be held liable under § 1983 on a respondeat sueprior theory, he may be found liable on the basis of his own acts or omissions. *See Maldonado-Denis*, 23 F.3d at 581 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Gutierrez-Rodriguez*, 882 F.2d at 561-62; *Bowen v. Manchester*, 966 F.2d 13, 20 (1st Cir. 1992); *Manarite v. Springfield*, 957 F.2d 953, 957 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992)). Even if a supervisor lacks actual knowledge of the conduct, he may be liable for the foreseeable consequences of formulating a rule, policy, or engaging in a custom, that leads to the challenged conduct. *See Maldonado-Denis*, 23 F.3d at 582 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). This may be the case when a supervisor "would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." *Maldonado-Denis*, 23 F.3d at 582 (citations omitted). A known history of widespread abuse may be enough to establish the necessary causal link and liability will attach if "the supervisor is on notice and fails to take corrective action." *See id.* The inadequate training of subordinates may provide a basis for a § 1983 claim against a supervisor. *See id.* at 583.

To survive a motion for summary judgment, a § 1983 plaintiff must provide specific factual allegations that demonstrate a supervisor's deliberate indifference and how that indifference caused the constitutional violations. *See Rodriguez-Oquendo*, 39 F. Supp. at 134. Here, Plaintiffs have met the

AO 72A
(Rev.8/82)

96-1947 (PG) 8

requirements to surpass summary judgment. Toledo may have been on notice, e.g., the seven-plus administrative reviews of Mercado and the 15 plus administrative reviews of Officer Thillet, of which Toledo saw at least 10 and was in office for at least 3.[3] Plaintiffs, at this stage, are able to facially meet the conditions necessary for supervisor liability under a § 1983 claim. Therefore, Defendant's Motion for Summary Judgment is DENIED.

### SONIA IRIZARRY'S CLAIMS UNDER SECTION 1983

Sonia Irizarry witnessed her husband, her son, and her daughter-in-law be beaten and arrested by the PRPD. She alleges that she suffered emotionally as a result. At no point does she assert any physical damage stemming from the PRPD's actions. A person may not sue for the deprivation of another person's civil rights, *see Soto Gómez v. López Feliciano*, 698 F. Supp. 28, 29 (D.P.R. 1988); the violation must be "personal" to the plaintiff.

Irizarry asserts a claim against Defendants on her own behalf, based upon the "violation of her personal rights." Irizarry claims to have suffered anguish, pain, and humiliation at the hands of Defendants. She asserts that she was threatened with arrest and physically intimidated, thus infringing upon her freedom of expression. Additionally, Irizarry alleges that she had to "endure the physical and psychological torture of trying to find money, not available to her, and during night hours, in order to immediately post bond for her three relatives." Pl. Opp. Br. at 5 (Dkt. 35)

Defendants counter that Irizarry "merely witnessed an incident in which her husband, son, and daughter-in-law were subject to unprovoked physical aggression by members of the police force." Def. Br. at 4 (Dkt. 24) Stated this way, one might think this sort of incident is a daily occurrence within the

---

[3]These are only the times that Mercado and Thillet were reported. Seen in the light most favorable to Plaintiffs, Toledo knew of Mercado's and Thillet's pasts and penchants for trouble.

96-1947 (PG) 9

PRPD. The Court cannot be so nonchalant.

> Emotions are intangible but they are nonetheless perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or damaged lock. Wounded psyche and soul are to be salved by damages as much as property that can be replaced at the local hardware store.

*Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir. 1979).

However, the Court cannot let emotion blind it to the fact that this alone does not give a plaintiff a § 1983 cause of action. "The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *Pittsley v. Warish*, 927 F.2d 3, 7-8 (1st Cir. 1991), *cert. denied*, 502 U.S. 879 (1991) (citing *Johnson v. Glick*, 481 F.2d 1028, 1032-33 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir.), *cert. denied*, 464 U.S. 821 (1983); *Bibbo v. Mulhearn*, 621 F. Supp. 1018, 1025 (D. Mass. 1985); *Keyes v. Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984)). Indeed, "only the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim." *Id.* at 8.

Two prior decisions in this district have found the same. In *Malavet Matos, et al. v. Puerto Rico Marine Mgm't, et al.*, No. 94-1358 (SEC), 1995 U.S. Dist. LEXIS 5673 (D.P.R. Mar. 1, 1995), the Court held that wives did not have standing to sue based upon the civil rights violations of their husbands. And in *Borreo-Rentero v. Cerda-Rivera, et al.*, 761 F. Supp. 5, 7 (D.P.R. 1991), the Court held that the witnesses of traumatic events who were non-participants did not have a § 1983 claim. The *Borrero-Rentero* Court differentiated between a mother and a daughter's circumstances and their

AO 72A
(Rev.8/82)

96-1947 (PG) 10

corresponding standing. Citing *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986), the Court explained that Mrs. Coon, who stood outside the trailer with deputies as they shot at the trailer (with her husband inside), had no standing to bring a § 1983 claim since she was not directly involved in the incident. Her daughter, on the other hand, was in the trailer while the shooting took place and thus could maintain her cause of action.

The incident Irizarry witnessed does not grant her standing under § 1983. As a witness to the beatings of her family, she lacks deprivation of her personal rights necessary to qualify for a § 1983 claim. Irizarry, through fortune, family and friends, escaped without physical harm. But her good fortune now precludes her from maintaining her § 1983 claim. Section 1983's purpose is to compensate a victim, not punish the police. Therefore, Sonia Irizarry's claims are DISMISSED for lack of standing. Irizarry's state court-based claims will continue as they arose from the same set of facts and circumstances that are at the core of this action.

## CONCLUSION

Having held above, Defendants' Motion for Summary Judgment by Codefendant Pedro Toledo is DENIED. Defendants' Motion for Summary Judgment on Coplaintiff Sonia Irizarry's Claims is GRANTED and the § 1983 claim is DISMISSED. The Court chooses not to dismiss Irizarry's corresponding state court claims.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 3, 2000.

JUAN M. PEREZ-GIMENEZ
U.S. District Judge

AO 72A
(Rev.8/82)